

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 05-03693 |
| | Chapter 7 |
| WINSTON MIRIKITANI, | |
| Debtor. | |
| DANE S. FIELD, bankruptcy trustee of the estate of Winston Mirikitani, | Adv. Pro. No. 16-90002 |
| Plaintiff, | |
| vs. | |
| MARIAN MIRIKITANI, et al., | Re: Dkt. No. 68, 69, and 76 |
| Defendants. | |

## AMENDED PROPOSED FINDINGS AND RECOMMENDED
## DECISION ON FRAUDULENT TRANSFER AND RELATED CLAIMS

In 1992, Winston Mirikitani, a former attorney, transferred his interest in

certain family companies to his sisters.

In 2005, Winston[1] filed this chapter 7 case. He received a discharge and the case was closed in due course.

In 2013, Winston publicly stated, for the first time, that he transferred his interest in the family companies to his sisters in 1992 for the purpose of keeping those assets out of the hands of his creditors, and that his sisters promised to return his interest to him when his troubles blew over. His sisters deny this. He reopened his bankruptcy case and the chapter 7 trustee filed this adversary proceeding to recover the transferred assets.

The parties have filed three motions for partial summary judgment. For the reasons that follow, I recommend that the district court DENY the motions in most respects.

## I.   FACTS

A few facts are undisputed. Winston his three sisters, defendants Marian Mirikitani, Eleanor Mirikitani, and Irene Mirikitani (the "Sisters"), owned roughly equal interests in Mirikitani Investment Corporation ("MIC") and in Kozan Company ("Kozan"), a Hawaii limited partnership of which MIC was general partner and Winston and the Sisters were limited partners.[2] In November 1992, Winston and

---

[1] I use Winston's first name for convenience only. I intend no disrespect.

[2] Dkt. 70 at 3, 70-1 at 2. All citations to page numbers of documents in the record refer to the page numbers assigned by the CM/ECF system.

2

the Sisters signed documents stating that Winston was making an absolute and irrevocable transfer of his interests in MIC and Kozan to the Sisters.[3]

Many facts are disputed. Winston testified (in declarations, a deposition, and the meeting of creditors held in his bankruptcy case) that he made the transfers for the purpose of protecting those assets from his creditors. (At the time of the transfers, he was on the brink of a divorce, he owed bank debt and taxes, and he was concerned about possible malpractice claims from his law practice.) He says that the Sisters knew of his purpose; indeed, he claims that the transactions were his Sisters' idea. He also claims that he received nothing in exchange for the transferred assets.[4]

The Sisters vigorously deny Winston's story. They say that the transactions were exactly what the documents say they were: outright, irrevocable transfers. They say that they had no knowledge of or involvement in Winston's alleged fraudulent scheme. They also claim that they gave value in exchange for the transfers, in the form of forebearance of collection on amounts that Winston had borrowed using the credit and collateral of MIC and Kozan and a later agreement by a bank lender to release Winston from his guaranty of certain bank debt.[5]

The procedural history is undisputed. On October 12, 2005, Winston filed a

---

[3] Dkt. 70 at 3.

[4] Dkt. 87 at 83-88, 252-303.

[5] Dkt. 70-1, 70-2, 70-3, 95-16, 95-18.

3

chapter 7 bankruptcy petition. He did not disclose that he had any interests in MIC or Kozan or any claims against the Sisters.[6] On January 27, 2006, he received a discharge in bankruptcy.

In 2013, Winston demanded that the Sisters transfers the interests in MIC and Kozan back to him.[7] The Sisters did not comply.

On March 14, 2014, Winston filed suit against the Sisters in state court. The complaint[8] lays out Winston's version of the transaction and seeks recovery of the transferred assets and other relief. The state court dismissed the action, holding that Winston lacked standing to maintain the claims because he did not disclose his claims in his 2005 bankruptcy case, and therefore the claims were still property of his bankruptcy estate and controlled by the trustee.[9]

Winston then moved, on November 23, 2014, to reopen his bankruptcy case.[10] In support of his motion, he filed a declaration in which he restated his story regarding the transfer to the Sisters. This court granted the motion and appointed a trustee to administer the estate.

---

[6] Dkt. 71-6, 71-9 at 4.

[7] Dkt. 87 at 112-13.

[8] Dkt. 71-7.

[9] Dkt. 87 at 133.

[10] Dkt. 71-9.

4

The trustee filed the complaint commencing this adversary proceeding on January 13, 2016.

In the meantime, on September 3, 2015, Winston and his wife filed another chapter 7 case. They received their discharge on July 3, 2016.

## II.    JURISDICTION AND VENUE

There is no dispute that the court has personal and subject matter jurisdiction and venue is proper in this district.

In the absence of the defendants' consent, the bankruptcy court lacks power to enter a final judgment on any of the claims in the complaint.[11] The bankruptcy court has the power, however, to provide proposed findings and a recommended judgment for the district court's de novo review.[12]

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] In resolving a summary judgment motion, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in

---

[11] *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 562, 566-70 (9th Cir. 2012), *affirmed on other grounds*, *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014).

[12] *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174 (2014).

[13] Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

5

favor of the nonmoving party.[14] The court does not weigh evidence, but rather determines only whether there is a genuine issue for trial.[15] Where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.[16]

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[17]

A party opposing a motion for summary judgment "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[18]

## IV. DISCUSSION.

### A. Trustee's Motion on Count I.

Count I of the complaint alleges that Winston transferred his interests in MIC and Kozan to the Sisters with the actual intent to hinder, delay, or defraud his present

---

[14] *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1347 (2015)*; Scott v. Harris*, 550 U.S. 372, 378 (2007).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

[16] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[18] Fed. R. Civ. P. 56(c)(1), made applicable by Fed. R. Bankr. P. 7056.

6

or future creditors, that the transfers are avoidable under Haw. Rev. Stat. § 651C-4(a)(1), and that the trustee is entitled to enforce the avoidance claims by virtue of section 544(b) of the Bankruptcy Code. The trustee seeks summary judgment on this count.

### 1. *Fraudulent intent.*

Section 651C-4(a)(1) of the Hawaii Revised Statutes permits a creditor to avoid a transfer made with actual intent to hinder, delay, or defraud creditors:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

> A bankruptcy trustee can exercise any creditor's avoidance powers.[19]

Usually, the plaintiff must use circumstantial evidence to prove the transferor's fraudulent intent, because people rarely admit that they deliberately kept assets away from their creditors. But this is the rare case in which the transferor–Winston–is adamant that he transferred assets to the Sisters in order to protect those assets from his creditors, his soon-to-be ex-wife, and potential malpractice claimants.

The trustee argues that Winston's testimony is conclusive (or virtually conclusive) proof of Winston's fraudulent intent. He says that no one other than Winston has direct, first-hand knowledge of his own intentions, and that no other

_____

[19] 11 U.S.C. § 544(b).

7

evidence on that topic could be more persuasive than Winston's own testimony.

I agree that Winston's testimony about his own mental state is admissible and that the trier of fact might find it compelling. But there is other evidence to the contrary (such as the Sisters' testimony that Winston never mentioned his intentions to them). Further, Winston has a financial motive to falsify; he hopes to gain a share of assets possibly worth millions of dollars. The Sisters might also argue that Winston is taking this position out of spite. A reasonable trier of fact could either believe or disbelieve Winston's testimony.

The trustee cites the Ninth Circuit's *Slatkin*[20] decision for the proposition that a debtor's admission of fraudulent intent can be sufficient to merit summary judgment without other supporting evidence. *Slatkin* holds that, if the transferor pleads guilty to a criminal offense involving the operation of a Ponzi scheme, the guilty plea conclusively establishes the transferor's fraudulent intent. *Slatkin* does not hold that any admission of fraudulent intent other than a guilty plea is conclusive or irrebutable. There is no guilty plea in this case.

Conversely, the Sisters argue that Winston's testimony cannot support his motion for summary judgment (or defeat the Sisters' motion for summary judgment) because it is uncorroborated and self-serving. In *Villiarimo*, the Ninth Circuit said that "this court has refused to find a 'genuine issue' where the only evidence presented

---

[20] *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 812 (9th Cir. 2008).

8

is 'uncorroborated and self-serving' testimony."[21] But the *Villiarimo* court did not actually employ this doctrine, so its statement is dicta. Further, the *Kennedy* decision on which the *Villiarimo* panel relied does not completely support the proposition. In *Kennedy*, the plaintiff alleged that she was a victim of disability discrimination. She claimed that she was partially disabled and could still perform the essential functions of her job, but was terminated nonetheless. The court observed that, when she presented a claim for disability benefits to the Social Security Administration, she claimed that she was completely disabled. Because her deposition testimony that she was only partially disabled was not only "uncorroborated and self-serving," but also "flatly contradicts both her prior sworn statements and the medical evidence," there was no genuine dispute of fact.[22] In other words, the declaration did not create a genuine dispute of fact, not just because it was uncorroborated and self-serving, but also was inconsistent with the plaintiff's own sworn statements.

The *Publishing Clearing House* case cited by the Sisters is also unhelpful.[23] In that case, the Federal Trade Commission sued the president of a company whose sales representatives had made misrepresentations. The defendant argued on appeal that she was the president in name only, and that another individual was really in charge. The

---

[21] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), *citing Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996).

[22] *Kennedy*, 90 F.3d at 1481.

[23] *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

9

Ninth Circuit noted that these statements were conclusory, self-serving, and uncorroborated; but the court also noted that the defendant had never made any of these statements in a sworn declaration or affidavit and had included them only in her appellate briefs. Therefore, the defendant offered NO declaration, let alone a self-serving, uncorroborated one, in support of her assertions.

In other words, I have found no case in which the Ninth Circuit relied solely on the rule that a self-serving, uncorroborated declaration cannot create a genuine dispute of fact. In all of those cases cited by the Sisters, there were additional reasons to disregard the declaration.

In this case, in addition to Winston's testimony, the trustee cites circumstantial evidence to support a finding of fraudulent intent. But the Sisters also cite circumstantial evidence. Both parties' evidence is strong enough to create a genuine dispute of fact, but neither parties' evidence is strong enough to negate any genuine dispute.

The trustee also cites two declarations and a deposition by Winston's mother which are consistent with Winston's story.[24] The Sisters argue that Mrs. Mirikitani, who was about 97 years old when she signed the declarations and 99 when she testified in the deposition, suffers from dementia and that Winston manipulated her into signing the declarations. They claim that the declarations and deposition are

---

[24] Dkt. 87 at 21, 95-7

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 10 of 25

inadmissible and, even if admissible, should be given little weight.[25] The trustee claims that the evidence of Mrs. Mirikitani's alleged dementia is inadmissible, she was apparently able to understand and answer the questions asked at her deposition, and the charge of manipulation is based on speculation, not evidence. Assuming that Mrs. Mirikitani's deposition and declarations are admissible, they would not change the outcome of this motion, because they are not sufficient to completely negate the contrary evidence. In other words, regardless of whether Mrs. Mirikitani's evidence is admissible, there would still be genuine disputes of material fact. The trial judge should decide whether these items are admissible and, if they are, the jury should decide what weight, if any, to give them.[26]

Therefore, I recommend that the district court deny the trustee's motion on this issue.

### 2. Timeliness.

The defendants contend that count I is time-barred. Section 651C-9(a) of the Hawaii Revised Statutes provides the applicable limitations period under state law:

> A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

---

[25] Dkt. 95-5, 95-6.

[26] The Sisters provided a video recording of Mrs. Mirikitani's deposition. I did not view it because Mrs. Mirikitani's deposition testimony is not necessary to create a genuine dispute of fact and could not negate the existence of a genuine dispute of fact. Further, if the court cannot properly evaluate a witness' testimony without considering the witness' demeanor, there must be a genuine issue of fact for trial.

11

> (1) Under section 651C-4(a)(1), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant . . . .[27]

Because the subject transfers occurred in 1992, the four-year period has long since expired. But under Hawaii law, the one-year period does not begin to run until a claimant discovered or could reasonably have discovered, not just the fact that the transfer occurred, but also the fraudulent nature of the transfer.[28]

There is no dispute that, by the time Winston filed his chapter 7 petition in 2005, no reasonably diligent creditor could have discovered the allegedly fraudulent nature of the transaction between Winston and the Sisters. This is because Winston had not revealed his allegedly fraudulent intent to anyone else, and there were no circumstances that would have alerted anyone to his intent. Therefore, the claims were not time-barred when Winston filed his bankruptcy petition in 2005.

Once Winston filed his chapter 7 petition, section 546(a) came into play. That section specifies the time within which a trustee may bring certain avoidance actions:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of–
>
> (1) the later of–
>
> (A) 2 years after the entry of the order for relief; or

---

[27] Haw. Rev. Stat. § 651C-9.

[28] *Schmidt v. HSC, Inc.,* 131 Hawaii 497, 510 (2014).

12

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 12 of 25

(B) 1 year after the appointment or election of the first trustee under section 702 . . . if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

Because Winston filed his bankruptcy petition and the trustee was appointed in 2005, the time for the trustee to file a claim under section 544(b) expired in 2007. But the doctrine of equitable tolling applies to section 546(a).[29] "Congress must be presumed to draft limitations periods in light of this background principle [of equitable tolling] . . . . That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and apply the principles and rules of equity jurisprudence."[30]

"Under the equitable tolling doctrine, where a party 'remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'"[31]

---

[29] *Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1143 (9th Cir. 2016); *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1387 (9th Cir. 1994)); *Templeton v. Milby (In re Milby)*, 545 B.R. 613, 620 (9th Cir. B.A.P. 2016); *see Young v. United States*, 535 U.S. 43, 49 (2002).

[30] *Young*, 535 U.S. at 49-50 (internal citations, quotation marks, and alteration omitted).

[31] *In re United Ins. Mgmt., Inc.*, 14 F.3d at 1384 (*quoting Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991)).

13

There is no dispute that the trustee acted diligently between the commencement and initial closing of Winston's bankruptcy case in 2005, but was prevented from discovering these transactions because Winston concealed them. The trustee could not have discovered the transactions until Winston told his story in the declaration he filed in support of his motion to reopen his bankruptcy case in 2014. (Winston's state court lawsuit in 2013 could not have alerted the trustee to the transactions because the trustee was discharged in 2005 and not restored to office until 2014.) This is enough to support equitable tolling.

Section 546(a)(2) terminates the trustee's right to file avoidance cases under section 544(b) when the bankruptcy case is closed. But this provision does not bar the prosecution of an action on an undisclosed claim or to recover an undisclosed asset.[32]

Therefore, I recommend that the district court hold that count I is timely and grant partial summary judgment in favor of the trustee on that point.

### 3. *Good faith and value defense.*

The initial transferee[33] of a transfer avoided under section 651C-4(a)(1) has an affirmative good faith defense: "[a] transfer . . . is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent

---

[32] *Gross v. Petty (In re Petty)*, 93 B.R. 208, 211-12 (9th Cir. B.A.P. 1988).

[33] There is no dispute that the Sisters are the initial transferees. They received Winston's interest in the family companies directly from Winston.

14

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed  12/19/16   Page 14 of 25

value[.]"[34] The Sisters bear the burden of establishing both of these elements.[35]

"Courts have been candid in acknowledging that good faith 'is not susceptible of precise definition.'"[36] The Ninth Circuit has mentioned three slightly different definitions of the phrase, without exclusively adopting any of them.

One court has remarked that a lack of good faith is demonstrated by a transferee who knows that a debtor is operating a Ponzi scheme. . . .

An early case cited by the trustee in this case held that a transferee's

knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors . . . should be deemed to have notice . . . as would invalidate the sale as to him.

These pronouncements indicate that courts look to what the transferee objectively "knew or should have known" in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint. . . . [S]ubjective assertions of good faith . . . are of no moment.

At least one court has held that if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent.[37]

---

[34] Haw. Rev. Stat. § 651C-8(a).

[35] *In re Cohen*, 199 B.R. 709, 718 (B.A.P. 9th Cir. 1996); Uniform Fraudulent Transfer Act § 8(a) comment 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged.").

[36] *Hayes*, 916 F.2d at 536 (citations omitted).

[37] *Id.* at 535-36.

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed  12/19/16   Page 15 of 25

Viewing the evidence in the light most favorable to the Sisters, there is a genuine dispute of fact regarding the Sisters' good faith. Winston claims that the Sisters knew of his fraudulent intent and that the Sisters actually suggested the transactions. The Sisters deny this. A reasonable jury might believe either of them.

The Sisters must also prove that they gave reasonably equivalent value in exchange for the transfers.

"Value" is property or satisfaction of an antecedent debt.[38] Whether the defendant gave value must be viewed from the perspective of the transferor's creditors.[39] The purpose of the fraudulent transfer statutes are to return lost value to the debtor's diminished estate to redistribute for the benefit of all creditors. "Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition [of value]."[40]

The statute does not define the phrase "reasonably equivalent value." But "reasonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave."[41]

The Sisters argue that they gave value in return for the transfers, in the form of

---

[38] *Hayes*, 916 F.2d at 540; Haw. Rev. Stat. § 651C-3(a) (2014).

[39] *Hayes*, 916 F.2d at 540.

[40] Uniform Fraudulent Transfer Act § 3(a) cmt. 2.

[41] *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 630 (3d Cir. 2007) (internal quotation marks omitted).

16

"their agreement to forbear from taking action against Winston to collect the more than $500,000 he admittedly failed to repay, as well as a $20,000 payment."[42] It is not clear that this constitutes "value." While "satisfaction" of a debt is "value," a temporary agreement merely to delay collection of a debt is not. The "$20,000 payment" was apparently a new loan. Loaned funds are not "value" because the asset represented by the cash lent is offset by the liability to repay the loan; in other words, a loan does not provide any net value to the debtor's estate that could offset the depletion of the estate due to the fraudulent transfer. Moreover, the Sisters offer no evidence that the value they gave was "reasonably equivalent" to the value of the assets that Winston transferred.

The trustee offers evidence that the assets of the family companies, and therefore Winston's interest in those companies, had substantial value. The Sisters complain that the trustee provided this evidence only in his reply memorandum. This is true but not dispositive. "Good faith and value" is an affirmative defense that the Sisters must assert and prove. The trustee was not required to anticipate the affirmative defense in his motion. The Sisters raised the defense in their opposition, and the reply was the trustee's first opportunity to respond. Nevertheless, the Sisters should be given an opportunity to respond to the trustee's valuation evidence.

Therefore, I recommend that the district court deny summary judgment on the

---

[42] Dkt. 84 at 44.

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 17 of 25

Sisters' affirmative defense of good faith and value.

## B. Sisters' Motion on Counts I – III.

The Sisters move for summary judgment on counts I, II, and III of the complaint. They argue that counts I and II are both time-barred and that, because those counts fail, count III must also fail. They also argue that part of count I and all of count II must be dismissed because the trustee cannot prove that Winston had present creditors when he made the transfers in 1992.

### 1. Timeliness.

I have discussed the timeliness of count I above. I recommend that the district court deny the Sisters' motion as to the timeliness of count I for the same reasons.

Count II is based on section 651C-4(a)(2) and 651C-5(a). Both of those sections permit creditors to avoid transfers that were not made with the intent to defraud but nevertheless improperly depleted the debtor's estate. Transfers of this kind are sometimes called "constructively fraudulent." Section 651C-4(a)(2) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . .
>
> > (2)   Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A)   Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the

18

business or transaction; or

> (B)   Intended to incur, or believed or reasonably should have
> believed that the debtor would incur, debts beyond the
> debtor's ability to pay as they became due.

Section 651C-5(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor whose claim arose before the transfer was made or the obligation
> was incurred if the debtor made the transfer or incurred the obligation
> without receiving a reasonably equivalent value in exchange for the
> transfer or obligation and the debtor was insolvent at that time or the
> debtor becomes insolvent as a result of the transfer or obligation.

Section 651C-5(a) provides a somewhat more relaxed standard than section 651C-

4(a)(2), but only a present creditor (i.e., a person to whom the debtor owed money

before the transfer was made) can employ section 651C-5(a), while both present and

future creditors can make claims under section 651C-4(a)(2).

> Claims under both of these sections are subject to the same limitations period:

> A cause of action with respect to a fraudulent transfer or obligation
> under this chapter is extinguished unless action is brought . . .

>> (2) Under section 651C-4(a)(2) or section 651C-5(a), within four
>> years after the transfer was made or the obligation was
>> incurred . . . .

Thus, while a statutory "discovery rule" applies to "actual fraud" claims under section

651C-(4)(a)(1), no comparable statutory provision applies to "constructive fraud"

claims under section 651C-4(a)(2) or 5(a).

> The Sisters argue the legislature's choice to enact an express discovery rule

19

applicable to the actual fraud claims, but to omit such a rule with respect to the constructive fraud claims, means that the courts should not impose a discovery rule (or the equitable tolling doctrine, which is similar to the discovery rule) upon constructive fraud claims.

Neither side cites any case holding that the discovery rule or similar doctrines either applies or does not apply to section 651C-9(2), nor have I found any such authority. Nevertheless, I conclude that the limitations period of section 651C-9(2) is not subject to a discovery rule or equitable tolling. In a case involving a federal statute of limitations, the Ninth Circuit observed that "congressional intent controls the inquiry in this case: we must determine whether congressional purpose is effectuated by tolling the statute of limitations in [these] circumstances."[43] If one substitutes "legislative" for "congressional," the same principle should apply to the Hawaii statute. The fact that the Hawaii legislature included a discovery rule in section 651C-9(1) but not in section 651C-9(2) implies that the legislature did not want courts to apply the doctrine of equitable tolling to section 651C-9(2). It is also significant that the legislature drafted section 651C-9 as a statute of repose, not a statute of limitations, because the equitable tolling doctrine generally does not apply to statutes of repose.[44]

---

[43] *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1188 (9th Cir. 2001) (internal quotation marks omitted).

[44] *DeNoce v. Neff (In re Neff)*, 824 F.3d 1181, 1184 (9th Cir. 2016).

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 20 of 25

The doctrine of equitable estoppel, on which the trustee also relies, presents a different question. Timeliness is an affirmative defense that the defendant can always waive. Under the doctrine of equitable estoppel, a court can refuse to consider a timeliness defense asserted by a defendant who has engaged in certain kinds of misconduct.[45] In other words, equitable estoppel means that the defendant has waived the limitations period by its conduct. Although the structure of section 651C-9 shows that the legislature did not wish to apply equitable tolling, there is no reason to think that the legislature meant to rule out the doctrine of equitable estoppel, because doing so would reward those who actively conceal their wrongdoing.

Therefore, I recommend that the district court determine that (1) there are genuine disputes of material fact concerning whether the Sisters are equitably estopped from asserting that count II is untimely and (2), if equitable estoppel does not apply, count II is time-barred.

### 2.     *Count III.*

Count III alleges that the Sisters are liable for the same transfers alleged in counts I and II on a theory of unjust enrichment. The Sisters argue that, because counts I and II are untimely, count III must also fail.

---

[45] *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir.1990) ("[E]quitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit.").

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed  12/19/16   Page 21 of 25

I have recommended that the district court hold that count I is timely and that, if equitable estoppel applies, count II is also timely. I recommend that the district court deny summary judgment on count III to the same extent.

### 3.    *Existence of Present Creditors in 1992.*

Only a present creditor, meaning a person to whom the transferor owed money before the transferor made the challenged transfer, can assert claims under the relaxed standard of section 651C-5(a). Both present and future creditors can assert claims under sections 651C-4(a)(1) and (2). The Sisters argue that the trustee's initial disclosures under rule 26 included no documents showing that Winston had any creditors before he made the transfers in 1992.[46] But the Sisters' own moving papers claim that, prior to 1992, Winston borrowed hundreds of thousands of dollars using the credit of MIC or Kozan, used the money for his personal purposes, could not repay the money, and also owed taxes.[47] Therefore, I recommend that the district court reject this argument.

### B.    Sisters' Motion on Counts IV through VIII[48]

### 1.    *Count IV (Oral Trust)*

Count IV alleges (in summary) that, when Winston transferred the assets to the

---

[46] Dkt. 69-1 at 21.

[47] Dkt. 69-1 at 7.

[48] Dkt. 68.

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 22 of 25

Sisters in 1992, the Sisters orally agreed to hold the assets for Winston and return them to him at a later date. The Sisters argue that the trustee must prove this claim by clear and convincing evidence and that the trustee's evidence is insufficient to withstand a motion for summary judgment.

The Sisters are correct that a party must establish a parol trust by clear and convincing evidence.[49] But the trustee is also correct that the standard works differently on a motion for summary judgment. The court should grant the Sisters' this motion only if no reasonable jury could find, by clear and convincing evidence, that there was an oral trust.

The evidence relating to the alleged oral trust is the same as the evidence pertaining to the "actual fraud" claims under section 651C-4(a)(1). The same genuine disputes of fact affect both claims. Therefore, I recommend that the district court deny the Sisters' motion as to count IV.

### 2. Counts V and VI (Breach of Fiduciary Duty)

Counts V and VI allege that, when the Sisters refused to return the assets to Winston, they breached fiduciary duties they owed to him. The Sisters move for summary judgment on these counts, arguing that the fiduciary duty claims are dependent on the oral trust claim, and if the oral trust claim fails, the fiduciary duty

---

[49] *Wery v. Pacific Trust Co.*, 33 Haw. 701, 706 (1935) (referring to a "parol" and a "resulting" trust).

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 23 of 25

claims cannot stand.

I have recommended in the preceding section that the district court deny summary judgment on the oral trust claims alleged in count IV. Therefore, by the Sisters' logic, the district court should also deny summary judgment on counts V and VI.

The trustee also argues that the fiduciary duty claims are not entirely dependent on the oral trust allegations. In count VI, the trustee alleges that the Sisters owed fiduciary duties to Winston by virtue of their family relationship, their ownership of interests in MIC and Kozan, and their positions as directors and officers of MIC. The memoranda do not discuss the scope of those duties in detail, however, so I recommend that the district court deny summary judgment on those counts.[50]

### 3.    Count VII (Unjust Enrichment)

The Sisters argue that count VII must fail because the trustee cannot prove that the transfers unjustly enriched the Sisters. They contend that Winston "was compensated appropriately" for the transfer of his interests, in the form of forebearance of collection of about $500,000 in debt and a new loan of $20,000.[51]

---

[50] I have serious questions regarding the scope of the alleged duties. For example, the trustee argues that family members owe fiduciary duties to one another, but I am not certain that the law imposes duties of trust on family members even if they do not in fact trust each other. *See* dkt. 96-16 at 24-25 (where Eleanor Mirikitani testified that, "My brother has always been and will forever be a pathological liar and a sociopath," and that "Winston's entire life has been abusing the three girls and my mother."

[51] Dkt. 95 at 19.

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 24 of 25

Although these items may be "consideration" adequate to support an enforceable contract, it is far from clear that their value is roughly equal to the value of the assets that Winston transferred. This valuation issue presents disputes of fact that the court should not resolve on a motion for summary judgment.

Therefore, I recommend that the district court deny the motion as to count VII.

### 4.    Count VIII (Civil Conspiracy)

The Sisters argue that count VIII must be dismissed because there is no "actual evidence" of a conspiracy between Winston and his Sisters to conceal the assets from Winston's creditors.[52] But Winston has testified that there was such a conspiracy. That testimony is sufficient to create a genuine dispute of fact.

Therefore, I recommend that the district court deny summary judgment on count VIII.

## V.    CONCLUSION

I recommend that the district court enter a partial summary judgment determining that the applicable statute of limitations does not bar count I and that count II is untimely unless the doctrine of equitable estoppel applies. I further recommend that the district court deny the motions in all other respects.

END OF RECOMMENDATION

---

[52] Dkt. 95 at 20.

U.S. Bankruptcy Court - Hawaii   #16-90002   Dkt # 127   Filed 12/19/16   Page 25 of 25